**In re Percy SIMS, Debtor.**

**Percy SIMS, Plaintiff,**

**v.**

**TALMAN HOME MORTGAGE, Sheriff James O'Grady, and Craig Phelps, as Chapter 13 Trustee, Defendants.**

**Bankruptcy No. 89 B 06717.**
**Adv. No. 89 A 0819.**

United States Bankruptcy Court, N.D. Illinois, E.D.

March 15, 1990.

Bennett Kahn, Melvin Kaplan & Associates, Chicago, Ill., for debtor/plaintiff.

John F. Brennan, Jarros, Tittle & O'Toole, Chicago, Ill., for defendants.

Craig Phelps, Standing Trustee, Janice Newport, Chicago, Ill.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RONALD S. BARLIANT, Bankruptcy Judge.

This matter comes before the court on the Debtor's complaint to avoid a fraudulent transfer of her home at a sheriff's sale.[1] The Court held a trial on this matter on January 18, 1990. After considering the testimony of the witnesses and the evidence offered by the parties, the Court finds that the sheriff's sale was a fraudulent transfer under 11 U.S.C. § 548(a)(2) and should be avoided. In support of this holding, the Court makes the following finding of facts and conclusions of law:

## FINDINGS OF FACT

1. In June, 1980 the Debtor bought a single family home located at 8229 South Justine in Chicago, Illinois for $40,000.00. The Debtor made a down payment of $12,000.00 and borrowed the $28,000.00 balance from the Defendant, Talman Home Federal Savings & Loan Association ("Talman"). Talman perfected a first mortgage lien on the Debtor's home as security for that loan.

2. The Debtor fell behind on her mortgage payments and on March 27, 1986, Talman filed a complaint seeking to foreclose on the mortgage. On March 9, 1989, a Judgment of Foreclosure was entered by the Circuit Court of Cook County, Chicago, Illinois.

3. The property was sold at a sheriff's sale on April 12, 1989. Notice of the sheriff's sale was sent to the Debtor and published in the Chicago Daily Law Bulletin during the weeks of March 20, March 27 and April 3, 1989. No other efforts were made to publicize the sale or otherwise attract potential buyers.

4. Talman was the only bidder at the sheriff's sale. Talman purchased the property for $32,040.86, which was the amount due on the mortgage. The sale was not confirmed before this bankruptcy case was commenced.

5. After the sheriff's sale, both of the parties had the property appraised. The Debtor's appraiser concluded that the property's value as of July 14, 1989 was $62,500.00. Talman's appraiser concluded that the market value of the property on November 9, 1989 was $53,000.00. Both appraisers primarily used the Market Data Approach in arriving at their estimates. Talman's appraiser, however, took into account the distressed sale circumstances.

1. *This is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and this Court has the jurisdiction to hear the matter pursuant to 28 U.S.C. § 1334.*

6. On April 30, 1989, the Debtor commenced this Chapter 13 proceeding.

7. The Debtor's Chapter 13 schedules list her only assets, other than her home that was sold at the sheriff's sale, as miscellaneous household furnishing and appliances worth $500.00. The Debtor claimed an exemption of those assets. At trial, the Debtor testified that her assets at the time of the sheriff's sale were only those listed on her schedules.

8. The Debtor's Chapter 13 schedules list her debts as $2,727.69, not including the amount due to Talman under the mortgage. At trial, the Debtor testified that she had these same debts at the time of the sheriff's sale. In addition to these debts, the Debtor was also indebted to General Finance in the amount of $1,000. This debt was secured by a lien on the Debtor's home.

9. At the time of the sheriff's sale, the Debtor was retired and received a monthly pension and social security payments. The Debtor was also receiving rental payments from tenants who were living in her home.

10. On April 12, 1989, the property had a value of no less than $53,000.

11. The $32,040.86 Talman bid at the foreclosure sale was less than a reasonable equivalent value of the property.

12. The Debtor became insolvent as a result of the foreclosure sale.

## CONCLUSIONS OF LAW

Section 548 of the Bankruptcy Code provides in pertinent part:

> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of filing of the petition, if the debtor voluntarily or involuntarily—
>
> ....
>
> (2)(A) received less than a reasonable equivalent value in exchange for such transfer or obligation; and
>
> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> ...

A debtor must establish the following four elements before she can set aside a transfer: (1) that the debtor had an interest at the time of the transfer; (2) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; (3) the transfer took place within one year of the filing of the bankruptcy petition; and (4) the transfer was for less than equivalent value. *E.g., In re Bundles,* 856 F.2d 815, 817 (7th Cir.1988).

The parties do not dispute that the Debtor had an interest in the property at the time of the sheriff's sale nor that the sale occurred within one year of the filing of the Debtor's Chapter 13 bankruptcy petition. The issues here are whether the Debtor was insolvent and whether she received less than the equivalent value for the property.

## STANDING

█ At trial, Talman suggested that a Chapter 13 debtor does not have standing to bring an action to avoid a transfer under § 548 of the Bankruptcy Code. In *Bundles,* the court stated that Section 522(h) of the Bankruptcy Code permits a Chapter 13 debtor to seek avoidance of a transfer under § 548, if the trustee has not done so. *Id.* at 816 f.n. 1; *Accord In re Robinson,* 80 B.R. 455 (Bankr.N.D.Ill.1987); *In re Einoder,* 55 B.R. 319 (Bankr.N.D.Ill.1985).

## TRANSFER

█ Talman also raised the issue of whether the sheriff's sale was a transfer within the meaning of § 548(a). Since the enactment of the 1984 Amendments to the Bankruptcy Code, which amended the definition of "transfer" to include a "foreclosure of the debtor's equity of redemption", many courts now consider this issue to have been resolved. 11 U.S.C. § 101(50); *In re Bundles,* 856 F.2d at 817 f.n. 2; *See also, In re Lindsay,* 98 B.R. 983, 988 (Bankr.S.D.Cal.1989).

In *Bundles,* there was no dispute over whether a transfer occurred at the foreclosure sale. The court stated that Indiana

law was clear that before the sale, the debtor retained title to the property, and the mortgagee had only a security interest, until the foreclosure sale, when the debtor's legal title to property was transferred. *In re Bundles,* 856 F.2d at 817 f.n. 2.

In deciding Talman's previous motion to modify the automatic stay, this Court held that under Illinois law applicable to this situation, the Debtor's interest in and legal title to the property was transferred to Talman at the sheriff's sale. Therefore, this court holds that the transfer that occurred at the sheriff's sale was a "transfer" within the meaning of § 548.

INSOLVENCY

■ Insolvency, for purposes of § 548, is determined by reference to § 101(31) of the Bankruptcy Code. *E.g., In re Willis,* 48 B.R. 295, 301 (S.D.Tex.1985). Section 101(31) provides:

> "insolvent" means—
>
> (A) ... financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair market valuation, exclusive of—
>
> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
>
> (ii) property that may be exempted from property of the estate under section 522 of this title.

The Debtor's testimony at the trial and her Chapter 13 schedules (which she adopted by her trial testimony) demonstrate that the Debtor had no assets other than the property sold at the sheriff's sale and household furnishings in which she has claimed as an exemption. The Debtor's testimony also indicated that at the time of the sheriff's sale, she had at least $3,727.00 in debts excluding the Talman mortgage. After the sheriff's sale, the Debtor no longer had title to the property that was her only non-exempt asset, but she still had $3,727.00 in debts. She was therefore rendered insolvent by that sale.

REASONABLY EQUIVALENT VALUE

■ The Seventh Circuit in *Bundles* addressed the issue of whether a regularly conducted foreclosure sale could be avoided as a fraudulent transfer under § 548. *Bundles,* 856 F.2d at 819. The court held that § 548 makes no distinction between sales that do and sales that do not comply with state law. Therefore, this Court must make an independent assessment of whether reasonable equivalent value was given at such a sale. *Id.* at 821.

Courts should neither grant a conclusive presumption in favor of a buyer at a regularly conducted foreclosure sale, nor simply limit the inquiry to a comparison of the sale price with the fair market value. *Id.* at 824. In deciding whether property was sold at reasonably equivalent value, the court must keep in mind that § 548 was created to preserve assets of the estate and focus on what the debtor received in return for what he surrendered. *Id.*

The court in *Bundles* stated that whether the foreclosure sale price is a reasonably equivalent value should depend on all the facts in the case. First, the bankruptcy court must compare the purchase price to the fair market value as affected by the fact of foreclosure. *Id.* Second, the bankruptcy court must examine the factors surrounding the foreclosure sale to determine whether the procedures used were designed not only for the creditor to receive the value of his interest, but also for the return of any equity to the Debtor. *Id.* The factors to be considered include: (1) whether there was a fair appraisal of the property before the sale; (2) whether the property was advertised widely; (3) whether competitive bidding was encouraged. *Id.*[2]

2. Before *Bundles,* Judge Katz in *In re Robinson,* 80 B.R. 455, 460 (Bankr.N.D.Ill.1987) set out a similar test. The court stated that it would consider:

> "evidence of all the circumstances surrounding the foreclosure sale, including, but not limited to, marketability of the property, effect of a forced sale regarding value, the fair market value, the risks of redemption and avoidance, the relative difference in the amount paid compared to the fair market value, the bargaining position of the parties, whether there was competitive bidding at the sale, and efforts made to stimulate competitive bidding."

*Id.* at 460.

In the present case, the fair market value of the property as effected by the distressed sale situation was no less than $53,000.00; the purchase price was only $32,040.86. Therefore, the purchase price was only 60% of the fair market value.[3] This is a substantial disparity. Further, the purchase price was the amount due on the mortgage so the Debtor received nothing for her equity in the property she lost.

The Court must next examine the circumstances surrounding the sale. First, an appraisal of the property was not done prior to the sale. Second, other than the publication of the notice of sale in the Chicago Daily Law Bulletin, there were no other efforts to advertise the property. Talman merely met the minimal requirements of state law. Third, there was no evidence to show that there was any competitive bidding encouraged. There is also no other evidence that Talman made any effort to achieve the highest price possible at the sale.

In *In re Lindsay,* 98 B.R. 983, 992 (Bankr.S.D.Cal.1989), the court applied slightly different standards and concluded that the debtors did not receive equally equivalent value under similar circumstances. The court looked to whether the creditor took commercially reasonable steps to sell the property. The court concluded that where the creditor did not appraise the property before the sale, advertise it widely or encourage competitive bidding, the creditor had not acted reasonably. *Id.* This finding, coupled with the fact that the sale price was only 64% of the fair market value of the property, led the court to hold that the sale was a fraudulent transfer because the debtor did not receive a reasonably equivalent value at the sale.

The facts in the present case warrant a similar finding. The Court finds that because the sale price was only 60% of the fair market value of the property, Talman took only the minimal steps required by law to advertise the sale and competitive bidding was not encouraged, the Debtor did not receive a reasonably equivalent value at the sale. Therefore, the sale will be avoided as a fraudulent transfer under 11 U.S.C. § 548(a)(2).

An appropriate Order will be entered.

3. For the purposes of this opinion, this Court does not need to determine which of the two appraisals in evidence is more accurate. The appraisal submitted by Talman does take into account the distressed sale situation and therefore may be more accurate for present purposes, but even accepting that appraisal, Talman did not pay a reasonably equivalent value for the property.