**Queen Archer BANKS,
Plaintiff–Appellant,**

v.

**Russell LoPICCOLO,
Defendant–Appellee.**

**No. 87 C 3657.
Bankruptcy Nos. 83 B 9388, 86 A 0113.**

United States District Court,
N.D. Illinois, E.D.

April 30, 1990.

Norman E. Wilson, Chicago, Ill., for plaintiff-appellant.

Neal M. Goldberg, Chicago, Ill., for defendant-appellee.

MEMORANDUM OPINION
AND ORDER

ALESIA, District Judge.

This is a bankruptcy appeal. Plaintiff–Appellant, Queen Archer Banks ("Banks"), appeals from an order entered by the bankruptcy court on February 24, 1987 in favor

---

of the defendant-appellee, Russell LoPiccolo ("LoPiccolo"). In that order, the bankruptcy court granted LoPiccolo's motion to strike and dismiss Banks' complaint to avoid the mortgage foreclosure sale of her residence. On appeal, Banks asks this Court to reverse the bankruptcy court's order of February 24, 1987 and to avoid and vacate the foreclosure sale of her residence. For the reasons stated in this opinion, this Court reverses the bankruptcy court's order of February 24, 1987 and remands this matter for further proceedings consistent with this opinion.

## I. *Facts and Procedural History*

This case has been in litigation for almost seven years. The pertinent facts are not disputed. On December 31, 1982, the Circuit Court of Cook County, Illinois entered a judgment of foreclosure and sale against Banks' property. The Sheriff of Cook County subsequently conducted a judicial sale of Banks' property on February 1, 1983. At the judicial sale, the Sheriff sold Banks' property for $7,483.00 to LoPiccolo, the highest bidder. Although LoPiccolo paid $7,483.00 for the property, Banks claims that the fair market value of the property at the time of sale exceeded $50,000.00.

Under Illinois law, once Banks' property was sold at a judicial foreclosure sale, she had the right to redeem the property by paying the purchase price plus interest within six months of the date of the judicial sale. *See* Ill.Rev.Stat. ch. 110, ¶ 12–122. If Banks failed to redeem the property, then LoPiccolo became entitled to receive a deed from the Sheriff. *See* Ill.Rev.Stat. ch. 110, ¶ 12–145.

On July 29, 1983, three days before the statutory redemption period expired, Banks filed for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 *et seq.*

("the Code"). Pursuant to Section 362(a) or, alternatively, Section 108(b) of the Code, Banks' filing of the bankruptcy petition operated as a stay. Accordingly, LoPiccolo thereafter moved to lift the stay. The bankruptcy judge, however, denied LoPiccolo's motion because he believed that once Banks filed her bankruptcy petition, Section 362 of the Code automatically stayed the running of the redemption period.

On October 24, 1983, Banks presented a creditor payment plan, in which she proposed to pay LoPiccolo the amount due for redemption in sixty monthly installments. Although LoPiccolo filed objections to this plan, the bankruptcy judge entered an order confirming the plan on November 28, 1983. LoPiccolo filed a motion for reconsideration, but the bankruptcy judge denied this motion in an order dated June 12, 1984.

LoPiccolo then appealed the bankruptcy court's final order to the district court. On appeal, the district court reversed the bankruptcy court's order, holding that the statutory redemption period had expired and that the bankruptcy judge had exceeded his authority when he extended the redemption period beyond that provided by Section 108(b) of the Bankruptcy Code.[1] *See LoPiccolo v. Queen Archer Banks*, No. 84 C 6595 (Dec. 17, 1984) (Aspen, J.). The district court also remanded the matter to the bankruptcy court to determine whether the transfer of the property to LoPiccolo could be avoided by the trustee under Section 548(a) of the Code and, if so, to conduct an evidentiary hearing as to the property's market value.

LoPiccolo then appealed that portion of the district court's order remanding the case to the bankruptcy court. The Seventh Circuit, however, dismissed the appeal, stating that a district court's order remanding a case to the bankruptcy court for

---

1. Section 108(b) provides:
   [I]f applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the

petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
   (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and
   (2) 60 days after the order for relief.
   11 U.S.C. § 108(b).

significant further proceedings is not a final judgment and, therefore, not appealable.

On remand, Banks filed an adversary complaint to avoid the mortgage foreclosure sale. In response, LoPiccolo filed a motion to strike and dismiss. In a memorandum opinion and order dated February 24, 1987, the bankruptcy court granted LoPiccolo's motion. Specifically, the bankruptcy court held that the judicial sale of Banks' residence to LoPiccolo did not constitute a fraudulent conveyance under Section 548(a)(2) of the Bankruptcy Code because LoPiccolo was an unrelated third-party purchaser and there were no allegations of fraud and collusion during the judicial foreclosure sale. This appeal followed.

## II. *Discussion*

At issue in this appeal is the statutory interpretation of 11 U.S.C. § 548(a)(2). This section of the Bankruptcy Code addresses fraudulent transfers and obligations which the bankruptcy trustee may avoid under certain circumstances. In pertinent part, Section 548(a) provides:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of filing of the petition, if the debtor

> \* \* \* \* \* \*

> (2)(A) receive[s] less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548(a)(2).

In analyzing the issue below, the bankruptcy judge correctly identified the necessary elements that a debtor must prove in order to avoid a transfer of property under Section 548(a)(2):

1. an interest of the debtor in property;

2. voluntary or involuntary transfer of the interest;

3. transfer of the interest within one year of the filing of the bankruptcy petition;

4. receipt by the debtor of less than a reasonably equivalent value for the property; and

5. insolvency of the debtor at the time of the transfer or as a result of the transfer.

*See In re Ristich,* 57 B.R. 568, 574 (Bankr. N.D.Ill.1986). Applying these standards to the facts of Banks' case, the bankruptcy judge concluded that Banks satisfied all but the fourth of the five necessary elements. As to the fourth element, the bankruptcy judge determined that Banks failed to establish that she had received less than a reasonably equivalent value for the property. Specifically, the bankruptcy judge held that "[w]hen a third party purchases property at a regularly conducted Illinois foreclosure sale there is an irrebuttable presumption that it was sold for reasonably equivalent value absent fraud or collusion." *Banks v. LoPiccolo,* No. 86 A 0113 (Bankr. N.D.Ill. Feb. 24, 1987) (citing *Ristich,* 57 B.R. at 577, and *In re Berge,* 33 B.R. 642, 646 (Bankr.W.D.Wisc.1983)).

At the time the bankruptcy court issued its ruling, there were two competing lines of authority espousing different interpretations of the term "reasonably equivalent value" under Section 548(a)(2). The first line of authority arose out of *Durrett v. Washington National Insurance Co.,* 621 F.2d 201 (5th Cir.1980), and has become known as "the *Durrett* 70 percent rule." Those courts adopting "the *Durrett* 70 percent rule" have held that for purposes of a foreclosure sale, a "reasonably equivalent value" should be a fixed percentage of the fair market value of the property, with 70 percent being the common benchmark. Under the *Durrett* approach, a foreclosure sale which results in a price below this 70 percent benchmark does not represent a "reasonably equivalent value" of the property and, therefore, is avoidable by the trustee.[2]

**2.** In *Durrett,* in reversing the trial court's determination that a judicial sale price which consti-

The second, competing interpretation of the term "reasonably equivalent value" evolved in the Ninth Circuit in *Lawyers Title Insurance Co. v. Madrid*, 21 B.R. 424 (Bankr. 9th Cir.), *aff'd on other grounds*, 725 F.2d 1197 (9th Cir.1982), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), and has become known as "the *Madrid* irrebuttable presumption rule." Courts adopting the *Madrid* interpretation of the term "reasonably equivalent value" have held that the sale price obtained at a regularly conducted, noncollusive foreclosure sale should be presumed conclusively to be the "reasonably equivalent value" of the property under Section 548(a)(2).

At the time the bankruptcy issued its ruling in this case, the Seventh Circuit had not explicitly endorsed either the *Durrett* or the *Madrid* interpretation of "reasonably equivalent value." Thus, faced with the competing lines of authority, the bankruptcy judge elected to follow the *Madrid* approach.

Since the bankruptcy court issued its ruling in this case, however, the confusion resulting from the *Durrett/Madrid* debate over the meaning of the term "reasonably equivalent value" as applied to a foreclosure sale has been settled by the Seventh Circuit. *See In Re Bundles*, 856 F.2d 815 (7th Cir.1988). In *Bundles*, the court reviewed the two competing lines of authority that had developed from *Durrett* and *Madrid*, but endorsed neither. In rejecting the *Madrid* approach, the court explained that neither the language of Section 548 nor its legislative history supported "an irrebuttable presumption in the case of mortgage foreclosure sales." *Bundles*, 856 F.2d at 821. According to the court, implying such an irrebuttable presumption would, in effect, create a special exception to the trustee's avoiding powers under Section 548(a)(2)(A) for property sold at a foreclosure sale. *Bundles*, 856 F.2d at 821. On that basis, the court declined to

adopt the *Madrid* irrebuttable presumption rule.

The Seventh Circuit likewise declined to define "reasonable equivalence" as an arbitrary, fixed percentage of fair market value, as has been done by courts strictly adhering to "the *Durrett* 70 percent rule." The court rejected the *Durrett* rule as too rigid and limited in scope. Instead, the court settled on a middle ground, fact-specific approach:

> In our view, in defining reasonably equivalent value, the court should neither grant a conclusive presumption in favor of a purchaser at a regularly conducted, non-collusive foreclosure sale, nor limit its inquiry to a simple comparison of the sale price to the fair market value. Reasonable equivalence should depend on all the facts of each case.

*Bundles*, 856 F.2d at 824.

While the court set forth no precise formula for evaluating "reasonable equivalence" in the context of a foreclosure sale, it outlined some general factors for the bankruptcy court's consideration. *See Bundles*, 856 F.2d at 824. The Seventh Circuit recommended that the bankruptcy court begin its analysis with a determination of the fair market value of the property. The bankruptcy court's inquiry should not end there, however. As the court in *Bundles* cautions, determining the fair market value is merely a starting point, and the bankruptcy court must also consider the fact that the sale resulted from a foreclosure and not from an arm's length transaction between a willing buyer and a willing seller. *Bundles*, 856 F.2d at 824. Ultimately, the bankruptcy court must focus on "the fair market value as affected by the fact of foreclosure." *Bundles*, 856 F.2d at 824.

Recognizing that the foreclosure sale price may be the only practical means of measuring the effect of foreclosure on the value of the property, the Seventh Circuit

---

tuted 57.7 percent of the fair market value of the property in question was a fair equivalent, the Fifth Circuit noted that it had been unable to locate any court decision that approved a transfer for less than 70 percent of the market value of the property. *Durrett*, 621 F.2d at 203.

This remark led others to coin the *Durrett* approach as "the *Durrett* 70 percent rule." This circuit has recently suggested that the court's reference to 70 percent in *Durrett* has been read too broadly. *See In Re Bundles*, 856 F.2d 815, 820 (7th Cir.1988).

noted that a *rebuttable* presumption might be appropriate:

> [I]n usual circumstances, it would be appropriate to permit a *rebuttable* presumption that the price obtained at the foreclosure sale represents reasonably equivalent value. However, the bankruptcy court also must examine the foreclosure transaction in its totality to determine whether the procedures employed were calculated not only to secure for the mortgagee the value of its interest but also to return to the debtor-mortgagor his equity in the property. The bankruptcy court therefore must consider such factors as whether there was a fair appraisal of the property, whether the property was advertised widely, and whether competitive bidding was encouraged.

*Bundles,* 856 F.2d at 824 (emphasis in original).

In this case, the bankruptcy court did not have occasion to consider the factors mentioned in *Bundles* because *Bundles* had not yet been decided and the meaning of "reasonable equivalence" in the foreclosure context had not been definitively resolved in this circuit. Based on *Bundles,* however, we must reverse the bankruptcy court's order of February 24, 1987 and remand this case to the bankruptcy court for further proceedings consistent with this opinion and the approach adopted in *Bundles.* In doing so, this Court expresses no view as to whether Banks received a "reasonably equivalent value" for her residence; we merely remand this case so that the bankruptcy court may conduct an evidentiary hearing, if necessary, and make the appropriate inquiries.

### III. *Conclusion*

For the reasons outlined, this Court reverses the bankruptcy court's order of February 24, 1987 and remands this case to the bankruptcy court for further proceedings consistent with this opinion.