888 F.2d 90
 58 USLW 2274, 21 C.B.C. 1158, 19
Bankr.Ct.Dec. 1627,
Bankr. L. Rep. P 73,083
 In re Harold Ray LITTLETON, Debtor.
James D. WALKER, Jr., Plaintiff-Appellee,
v.
Harold Ray LITTLETON, Defendant,
First Federal Savings and Loan Association, Philadelphia
Savings Fund Society, Defendants-Appellants.
 No. 88-8728.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 29, 1989.
 
 William A. Trotter, III, Augusta, Ga., for First Federal Sav. and Loan ass'n.
 Chuck P. Pardue, Kilpatrick & Pardue, Augusta, Ga., for Philadelphia Sav. Fund Soc.
 James D. Walker, Jr., Augusta, Ga., pro se.
 Appeal from the United States District Court For the Southern District of Georgia.
 Before RONEY, Chief Judge, FAY, Circuit Judge, and ALLEN*, Senior District Judge.
 FAY, Circuit Judge:
 
 
 1
 This is an appeal from an order entered in the bankruptcy court, Matter of Littleton, 82 B.R. 640 (Bankr.S.D.Ga.1988) and affirmed by the United States District Court for the Southern District of Georgia, holding that a foreclosure sale instituted by the appellant, Philadelphia Savings Fund Society ("Philadelphia Savings"), and the subsequent conveyance by Philadelphia Savings to appellant First Federal Savings and Loan Association ("First Federal") were fraudulent transfers under 11 U.S.C. Sec. 548(a). The bankruptcy court held that under Durrett v. Washington Nat'l. Ins. Co., 621 F.2d 201 (5th Cir.1980), the conveyances were avoidable by the debtor's trustee in bankruptcy because the foreclosure sale, which occurred within one year before the debtor's bankruptcy petition, brought a price of less than 70% of the fair market value of the property and rendered the debtor insolvent. Because we find that the avoidance of the foreclosure sale by the trustee undermines, rather than accomplishes the purposes of Sec. 548 of the bankruptcy code, we reverse the order of the bankruptcy court.
 
 
 2
 * A review of the record reveals that there are few factual issues in dispute. At trial, the parties stipulated to the following facts: The debtor, Harold Ray Littleton owned a parcel of real property in Richmond County, Georgia, subject to three liens. Philadelphia Savings, as the assignee of NCNB Mortgage Corporation, held a first deed to secure debt which secured a 1977 loan for $38,000.00 to purchase the property. First Federal held by assignment from Land Bank Equity Corporation a second deed to secure debt which secured a $15,305.00 debt incurred in 1985. The security interest of First Federal was subordinate to the first priority security deed in favor of Philadelphia Savings. Both of these deeds to secure debt were recorded in the Office of the Clerk of Superior Court, Richmond County, Georgia.[1]
 
 
 3
 On December 3, 1985, Philadelphia Savings, exercising the power of sale in its security deed, foreclosed and bid into the property at the foreclosure sale for $34,917.09, which was the outstanding balance due on the note. The foreclosure wiped out First Federal's lien on the property, upon which $15,925.48 was owed at the time of foreclosure. On March 27, 1986, Philadelphia Savings sold the property to First Federal for $35,877.89. On October 8, 1986, Littleton filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Georgia. In August of 1987, First Federal sold the property to Ray Dunagan for $50,000.00.
 
 
 4
 The parties gave conflicting testimony as to the fair market value of the property at the time of the foreclosure. The bankruptcy court found the debtor's appraisal persuasive and made a finding of fact that the fair market value was $55,000.00. Littleton, 82 B.R. at 641.
 
 II
 
 5
 The plaintiff James D. Walker, Jr., acting in his capacity as Chapter 7 Trustee, brought this action on May 14, 1987 under sections 548 and 550 to recover the value of the alleged fraudulent transfers.[2] The bankruptcy judge held that the foreclosure sale constituted a "transfer of an interest" in the property under Sec. 548. Because this transfer occurred within one year prior to the debtor's petition in bankruptcy, it could be avoided by the trustee in bankruptcy if the debtor received less than "a reasonably equivalent value" for the property, Sec. 548(a)(2)(A), and if the debtor was insolvent on the date of the foreclosure or became insolvent as a result of the foreclosure. Sec. 548(a)(2)(B)(i).
 
 
 6
 The court found that the trustee satisfied his burden of proving insolvency under Sec. 548(a)(2)(B)(i), based on evidence that the debtor had debts of $20,015.91 and non-exempt assets of only $1,800.00 on the date of foreclosure. Littleton, 82 B.R. at 643. Next, the court found that the foreclosure sale price of $34,927.09 equalled 63.49% of the fair market value of the property. Id. at 640. Thus, the court held that under Durrett v. Washington Nat'l. Ins. Co., 621 F.2d 201 (5th Cir.1980)[3] and its progeny, the foreclosure sale could be set aside as a fraudulent conveyance. The court entered judgment in favor of the trustee and against Philadelphia Savings and First Federal for $20,082.91, the difference between the foreclosure sale price and the market value of the property. 11 U.S.C. Sec. 550(a).[4] The defendants appealed to the district court, which affirmed the bankruptcy court order on September 9, 1988. (R.1-9)
 
 III
 
 7
 In Durrett, the Fifth Circuit held that where the consideration given for the debtor's property at a nonjudicial foreclosure sale was only 57.7% of its market value, the transfer was fraudulent under the Bankruptcy Act Sec. 67(d).[5] The district court in that case found that the fair market value of the property at the time of the sale was $200,000.00, and the only bid received by the trustee was $115,400.00. As in the present case, the amount of the bid was the exact amount necessary to liquidate the indebtedness secured by the deed of trust. In Durrett, however, the property was encumbered by one lien only, and thus the court noted that the sale deprived the bankruptcy estate of $84,600.00 of equity in the property. 621 F.2d at 203.
 
 
 8
 In holding that a sale of the property for 57.7% of its market value was a constructive fraudulent transfer, the court stated:
 
 
 9
 We have been unable to locate a decision of any district or appellate court dealing only with a transfer of real property as the subject of attack under section 67(d) of the Act, which has approved the transfer for less than 70 percent of the market value of the property.
 
 
 10
 Id.
 
 
 11
 As the bankruptcy court correctly noted, the court's suggestion in Durrett that all transfers for less than 70% of market value were avoidable under Sec. 67(d) is cleary dictum. Littleton, 82 B.R. at 642. Nonetheless, many courts have interpreted Durrett as requiring a minimum purchase price of 70% of the property's fair market value in order to be reasonably equivalent to the debtor's interest. See, e.g. In re Wheeler, 34 B.R. 818 (Bankr.N.D.Ala.1983) (67.7% of market value held insufficient); Matter of Berge, 33 B.R. 642 (Bankr.W.D.Wis.1983) (68.5% held insufficient); In re Thompson, 18 B.R. 67 (Bankr.E.D.Tenn.1982) (80.8% of market value was reasonably equivalent.)
 
 
 12
 Section 548 provides that the trustee may avoid any transfer of property, where the other requirements are met,[6] when the transfer is made for less than reasonably equivalent value. Had Congress intended that some fixed percentage be used for this determination in all cases, it would have so provided in the statute. We believe that the 70% rule provides a useful guideline by which the bankruptcy court may evaluate the fairness of a transfer under Sec. 548. However, as many courts have recognized, a determination of reasonable equivalence must be based upon all the facts and circumstances of each case. See, e.g., In re Hulm, 45 B.R. 523 (Bankr.D.N.D.1984).
 
 
 13
 In In re Fargo Biltmore Motor Hotel Corp., 49 B.R. 782 (Bankr.D.N.D.1985), the court addressed the question of whether the foreclosure of the debtor's motel property was avoidable under Sec. 548 as being a transfer for less than reasonably equivalent value. The court upheld the transfer, explaining that an absolute, bright line rule should not be applied without regard to the particular facts of each case:
 
 
 14
 [T]he term "reasonably equivalent value" is not capable of precise computation, and this Court does not believe that reasonably equivalent value can in every case be arrived at by blindly applying a percentage rule. There may be other factors which tip a judgment based strictly on percentage one way or the other. 70% is on the border line even in those cases applying a strict percentage rule; and in those cases, as in all cases based upon section 548, the burden is with the debtor to establish each element of the alleged fraudulent transfer.... [I]t remains for the debtor to establish the factors which would tip the court's judgment in its favor since the presumption of reasonableness is with the foreclosing party in the first instance. In the instant case, the Court is not persuaded by the totality of the evidence that the sale price was not the reasonably equivalent value of the property.
 
 
 15
 Id. at 789-790. See also In re Richardson, 23 B.R. 434 (Bankr.D.Utah 1982) (court should consider the bargaining position of the parties and the marketability of the property transferred as additional factors); In re Adwar, 55 B.R. 111 (Bankr.E.D.N.Y.1985) (court should take into account the fact that sale in a foreclosure market brings less than one in a retail market); In re Smith, 24 B.R. 19, 23 (Bankr.W.D.N.C.1982) (court should consider the absolute difference in the amount paid compared to the fair market value--$700,000.00 paid for property valued at $1,000,000.00 might not constitute reasonably equivalent value even though 70% standard is met).
 
 
 16
 Under a strict application of the 70% rule, the transfer effected by Philadelphia Saviangs at the foreclosure sale would fail the reasonably equivalent value test. However, it is clear to us that the result reached by the bankruptcy court and the district court in this case works a manifest inequity by allowing the trustee to avoid the sales to Philadelphia Savings and to First Federal. Unlike the bankrupt estate in Durrett, the estate here was deprived of little or no equity in the property, since there were junior liens outstanding on the property. The debtor has, in effect, received more than the amount that Philadelphia Savings bid on the property because the claim of First Federal was satisfied, the result that would have been obtained if First Federal had bought the property for the amount of the first lien plus the amount of its lien at the foreclosure sale. Thus, neither of the lienholders received any value from the debtor's property that would have gone to the debtor's estate had different procedures been followed.[7]
 
 
 17
 As this court has stated, the "cornerstone of the bankruptcy courts has always been the doing of equity." In re Waldron, 785 F.2d 936, 941 (11th Cir.), cert. dismissed, 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986). The record in this case is devoid of any evidence whatsoever that the two creditors acted in bad faith. By foreclosing on the property, Philadelphia Savings was able to recover the value of its equity in the property. First Federal, in turn, recovered the value of its equity by purchasing the property from Philadelphia Savings and then selling it to a third party. It would be totally inequitable to now permit the debtor, or the unsecured creditors as the case may be, to realize a $20,000.00 windfall from a property in which he had no equity over the secured liens. Under the peculiar facts of this case, a rigid application of the 70% rule suggested by Durrett would produce an unfair result. Equity, by its very definition, must contain the flexibility necessary to do that which is right between the parties.
 
 
 18
 Accordingly, the order of the bankruptcy court, and the final order of the district court are REVERSED, and the matter is REMANDED to the bankruptcy court for entry of judgment in favor of the defendants.
 
 
 
 *
 Honorable Charles M. Allen, U.S. District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 A third party, Larry Maioriello, had a $3,000 lien, which is not here at issue
 
 
 [2]
 11 U.S.C. Sec. 548 provides, in part, as follows:
 Sec. 548. Fraudulent transfers and obligations
 (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
 * * *
 2(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation....
 
 
 [3]
 The Eleventh Circuit in Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [4]
 11 U.S.C. Sec. 550 provides, in part, as follows:
 Sec. 550. Liability of transferee of avoided transfer
 (a) Except as otherwise provided in this section ... the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
 (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
 (2) any immediate or mediate transferee of such initial transferee.
 
 
 [5]
 Section 67(d) of the 1898 Act, 11 U.S.C. Sec. 107(d), was the forerunner to Sec. 548(a) of the Code. Courts have since applied the reasoning of Durrett to cases brought under Sec. 548. See, e.g., In re Thrifty Dutchman, Inc., 97 B.R. 101 (Bankr.S.D.Fla.1988); Roy v. Federal Nat'l. Mortgage Ass'n., 76 B.R. 188 (Bankr.N.D.Fla.1987)
 
 
 [6]
 We reject the defendants argument that Sec. 548 is not applicable to the foreclosure by Philadelphia Savings, because there was no "transfer" of the debtor's interest within one year of the filing of the debtor's petition. The defendant's urge us to adopt the position taken by some courts, most notably the Ninth Circuit in In re Madrid, 725 F.2d 1197 (9th Cir.), cert. denied, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), and the Sixth Circuit in Matter of Winshall Settler's Trust, 758 F.2d 1136 (6th Cir.1985), that the transfer under Sec. 548(a)(2)(A) occurs at the time of the perfection of the debt deed under state law, and not at the time of foreclosure. In this case, both of the defendants' deeds to secure debt were perfected well prior to the one year reach back period of Sec. 548
 The law is settled in this circuit, however, that a foreclosure "constitutes a 'transfer' by debtor in possession." Durrett, 621 F.2d at 204. In this case, the foreclosure by Philadelphia Savings occurred about ten months prior to the filing of the petition in bankruptcy. Thus the fraudulent transfer provisions of the Code would be applicable to the foreclosure if the other requirements of Sec. 548 were met.
 
 
 [7]
 We do not here adopt the position taken by some courts that the determination of reasonably equivalent value for purposes of Sec. 548 is computed by comparing the purchase price at the foreclosure sale to the interest of the debtor transferred after first subtracting the amount of the nonforeclosing liens from the fair market value. See, e.g., In re Jacobson, 48 B.R. 497, 499 (Bankr.D.Minn.1985). It is inappropriate to roll in the value of inferior liens because the effect of foreclosure is to cut off junior encumbrances. See In re McClintock, 75 B.R. 612 (Bankr.W.D.Mo.1987). The debts secured by the junior liens remain, but they become unsecured debts and the purchaser liens remain, but they become unsecured debts and the purchaser takes title free and clear of any inferior encumbrances on the property
 We see no reason, however, why the court must consider only the foreclosure sale of the property in determining whether the debtor received reasonable value for his interest. Where as here, subsequent dispositions of the property provide to the parties involved only the value to which they are clearly entitled, it is proper for the court to consider the effect of all transfers of the property in making its determination.