955 F.2d 1440
 60 USLW 2634, 26 Collier Bankr.Cas.2d 1002,
22 Bankr.Ct.Dec. 1178, Bankr. L. Rep. P 74,500
 In the Matter of Johnny GRISSOM and Jeanette Holland
Grissom, Debtors.
Johnny GRISSOM and Jeanette Holland Grissom, Plaintiffs-Appellees,
v.
Birnet L. JOHNSON, et al., Defendants,
C & S National Bank, Defendant-Appellant.
 No. 90-8890.
 United States Court of Appeals,
Eleventh Circuit.
 March 17, 1992.
As Amended April 29, 1992.
 
 Henry B. Napier, Richard H. Siegel, McCalla, Raymer, Padrick, Cobb, Nichols and Clark, Atlanta, Ga., for defendant-appellant.
 Lee Ringler, Augusta, Ga., for plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of Georgia.
 Before COX and BIRCH, Circuit Judges, and ENGEL*, Senior Circuit Judge.
 BIRCH, Circuit Judge:
 
 
 1
 This case requires us to interpret 11 U.S.C. § 548 (1988) ("Section 548"), an important section of federal bankruptcy law. This provision allows a trustee of a bankruptcy estate to avoid a foreclosure sale of a debtor's property if that sale brings less than a "reasonably equivalent value" of the property. Id. § 548(a)(2)(A). In construing Section 548, we must respect the rights of secured creditors who lawfully foreclose on collateral. At the same time, however, we must endeavor to prevent foreclosure sales which unnecessarily deplete the resources of a bankruptcy estate. Our task is complicated because the statutory language has been left undefined and our decisions interpreting that language afford little guidance in this case.
 
 
 2
 The appellees, Johnny and Jeanette Grissom, failed to make the required payments on a loan which was secured by their residence. Exercising the legal rights granted by Georgia law, appellant Citizens & Southern National Bank ("C & S" or "bank") foreclosed on the collateral, selling the Grissoms' property to the highest third-party bidders at an advertised foreclosure sale. Shortly thereafter, the Grissoms voluntarily sought Chapter 13 bankruptcy protection and filed a complaint in the United States Bankruptcy Court for the Southern District of Georgia. Their complaint sought to nullify the foreclosure sale because C & S allegedly sold the property too cheaply. After the case was tried, the bankruptcy court ruled in favor of the Grissoms because it was convinced that C & S did not sell the property for its reasonably equivalent value. On appeal, the United States District Court for the Southern District of Georgia affirmed the bankruptcy court.
 
 
 3
 We are convinced that both the bankruptcy court and the district court misunderstood the scope and meaning of our cases interpreting Section 548. In determining whether or not the foreclosure sale brought the reasonable equivalent of the property's value, both courts relied too heavily on a single factor--whether or not the sale price was 70% of the actual market value of the residence. In addition, the record before both courts was largely silent regarding several other important factors bearing upon the determination of reasonable equivalency. Under these circumstances, a correct decision could not be made as to whether or not the Grissoms could avoid the bank's foreclosure sale. Therefore, we VACATE both orders and REMAND the case to the district court for further proceedings consistent with this opinion.
 
 I. BACKGROUND
 A. The Relevant Facts
 
 4
 In 1971, Johnny Grissom borrowed $18,000 from C & S. The loan was secured by the Grissoms' residence in Augusta, Georgia. Eventually, the Grissoms defaulted in payment upon this note. After C & S notified the Grissoms about the default and about the bank's intention to foreclose on the collateral, C & S advertised the foreclosure sale once a week for four weeks. On April 4, 1989, the bank conducted a nonjudicial foreclosure sale of the Grissoms' property at the courthouse in Richmond County, Georgia. The property was sold to the highest bidders, Birnet and Leslie Johnson. The sale price was $14,059--exactly the amount that the Grissoms owed on the note to C & S. It is undisputed that the bank's method of foreclosure--notifying the party in default, advertising the foreclosure sale, selling the property to the highest bidder--was in full compliance with Georgia law, see O.C.G.A. §§ 44-14-160 to -162 (1982), and with the agreement between the parties.
 
 
 5
 The Grissoms filed for bankruptcy protection one day after the sale of their residence. One month later, they filed an adversary proceeding in the bankruptcy court against C & S and the Johnsons. In the portion of their complaint which is relevant to this appeal, the Grissoms contended that the foreclosure sale could be avoided by their bankruptcy estate because the Johnsons purchased the property for less than its "reasonably equivalent value" within the meaning of Section 548.[1] For relief, the Grissoms asked to recover their residence.[2]
 
 B. The Proceedings Below
 
 6
 1. The Bankruptcy Court.
 
 
 7
 The Grissoms' case was tried in bankruptcy court on July 7, 1989. At trial, the Grissoms argued that Section 548 authorized the avoidance of the foreclosure sale. In relevant part, Section 548 provides:
 
 
 8
 The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for such transfer ... and ... became insolvent as a result of such transfer....
 
 
 9
 11 U.S.C. § 548(a)(2) (1988). The parties agreed that the foreclosure sale occurred within one year of the bankruptcy petition and left the Grissoms insolvent. Therefore, the only substantial issue before the trial court was whether or not the sale price--$14,059--was a reasonably equivalent value of the Grissoms' residence.
 
 
 10
 At the time of the trial, the seminal case bearing on the proper determination of reasonable equivalency was an opinion of our predecessor court, Durrett v. Washington National Insurance Co., 621 F.2d 201 (5th Cir.1980). Durrett held, on the facts before the court, that a foreclosure sale which brought 57.7% of the market value of a debtor's property was avoidable under the predecessor of Section 548. Durrett, 621 F.2d at 203. In addition, the Durrett court made this observation: "We have been unable to locate a decision of any district or appellate court ... which has approved the transfer [of a debtor's property] for less than 70 percent of the market value of the property." Id. Because of this passage, the "Durrett 70% rule" became entrenched in many courts, despite the fact that the Fifth Circuit's observation was the purest form of dictum. See, e.g., Federal Nat'l Mortgage Ass'n v. Wheeler (In re Wheeler ), 34 B.R. 818, 821 (Bankr.N.D.Ala.1983) (mechanically applying the Durrett 70% rule); Berge v. Sweet (In re Berge ), 33 B.R. 642, 649-50 (Bankr.W.D.Wis.1983) (same).
 
 
 11
 Given the influence of Durrett and its progeny, the Grissoms' trial strategy was clear. The Grissoms attempted to establish a high market value of their residence, so that $14,059 would be less than 70% of that established value. To facilitate this strategy, the Grissoms offered a variety of evidence indicative of the property's true market value: a Richmond County tax document stating the residence's value to be $26,580; another appraisal indicating a similar value; and the testimony of Jeanette Grissom, who stated that Birnet Johnson had offered to sell the property back to the Grissoms for $26,500. To counter this strategy, C & S offered the testimony of Birnet Johnson, who claimed that the property was only worth $18,000 "as is." In sum, the trial proceedings before the bankruptcy court were influenced heavily by the Durrett dictum.
 
 
 12
 Over two months after the trial but before the bankruptcy court ruled on the Grissom matter, this court decided Walker v. Littleton (In re Littleton ), 888 F.2d 90 (11th Cir.1989). Littleton substantially clarified Durrett. Recognizing that Durrett 's 70% language was being afforded too much weight in the lower courts, we warned against talismanic adherence to any particular percentage figure. Littleton, 888 F.2d at 92-94. Instead, we held that "a determination of reasonable equivalence must be based upon all the facts and circumstances of each case." Id. at 93 (emphasis added).
 
 
 13
 The bankruptcy court appeared unaffected by Littleton. In its order dated December 20, 1989, the court recognized Littleton 's command to consider all relevant factors. Nevertheless, the bankruptcy court relied almost exclusively upon Durrett 's 70% test, stating that it was "[t]he long standing rule in this circuit." Order and Judgment of the Bankruptcy Court at 8, Exhibits Vol. 1. The court found the actual market value of the Grissoms' residence to be $26,000.[3] Because the sale price of $14,059 was less than 70% of the property's market value of $26,000, the bankruptcy court ruled that the bank's foreclosure sale did not bring a reasonably equivalent value and therefore the sale was avoidable pursuant to Section 548. Citing the remedy provisions of 11 U.S.C. § 550 (1988), the court ordered judgment against C & S in the amount of $11,941--the amount of equity purportedly lost in the sale.[4]
 
 
 14
 2. The District Court.
 
 
 15
 C & S appealed the bankruptcy court's decision to the United States District Court for the Southern District of Georgia. The district court's reliance upon the Durrett dictum is also very obvious. In its order, the district court stated that "the bankruptcy court correctly followed the general rule that a sale for less than seventy percent (70%) of the fair market value is less than a 'reasonably equivalent value.' " R1-5-4. Taking the Durrett rule as a given, the district court's analysis became mechanical. If the property was worth $18,000 (as stated by Birnet Johnson), the foreclosure sale price of $14,059 was an acceptable value because "$18,000.00 x .70 = $12,600.00." R1-5-4 n. 6. However, if the property was worth $26,000 (as found by the bankruptcy court), $14,059 was not a reasonably equivalent value because "$26,000.00 x .70 = $18,200.00." R1-5-4 n. 5. Therefore, the district court concluded that its decision would rest upon the bankruptcy court's finding of fair market value. After holding that the bankruptcy court's determination of a $26,000 fair market value was supported by the evidence, the district court affirmed the order of the bankruptcy court.[5]
 
 II. DISCUSSION
 
 16
 A. The Determination Of Reasonable Equivalency
 
 
 17
 1. The "All Facts And Circumstances" Rule.
 
 
 18
 In Littleton, we indicated that the determination of reasonable equivalency under Section 548 is necessarily a fact-intensive inquiry, requiring the trial court to consider and analyze the totality of the circumstances surrounding a foreclosure sale. 888 F.2d at 93. There is no simple mathematical test which adequately substitutes for this required analysis of all important facts. Id. We reiterate Littleton 's observation that Congress did not intend to make a fixed percentage dispositive of reasonable equivalence; therefore, Durrett 's 70% test should only be used as a guideline. Littleton, 888 F.2d at 93. In these ways, our decision in Littleton coincides with the majority of circuit courts which have considered this issue. See Barrett v. Commonwealth Fed. Sav. and Loan Ass'n, 939 F.2d 20, 23-25 (3d Cir.1991); Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.), 914 F.2d 458, 467 (4th Cir.1990); Bundles v. Baker (In re Bundles ), 856 F.2d 815, 824-25 (7th Cir.1988); First Fed. Sav. & Loan Ass'n of Bismarck v. Hulm (In re Hulm ), 738 F.2d 323, 327 (8th Cir.), cert. denied, 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984). In order to hold that a lawful foreclosure sale can be avoided by a trustee pursuant to Section 548, the trial court must be " 'persuaded by the totality of the evidence that the [foreclosure] sale price was not the reasonably equivalent value of the property.' " Littleton, 888 F.2d at 93 (quoting Fargo Biltmore Motor Hotel Corp. v. Metropolitan Fed. Bank (In re Fargo Biltmore Motor Hotel Corp.), 49 B.R. 782, 790 (Bankr.D.N.D.1985)).
 
 
 19
 Therefore, Littleton makes it clear that a foreclosure sale price of less than 70% of the actual market value of the property can still satisfy the reasonably equivalent standard of Section 548 if the court's analysis of the relevant factors so indicates. In Littleton, the additional facts which justified a foreclosure sale price of 63.49% of the property's value related to the satisfaction of junior liens. We held that 63.49% was a reasonably equivalent value of the debtor's property because the facts indicated that the foreclosure sale also terminated the junior liens which were outstanding on the property. Therefore, we validated the foreclosure sale even though it technically violated the Durrett dictum because the debtor in fact received a reasonable equivalent of the value of his property--63.49% in cash, as well as relief from the junior liens. See Littleton, 888 F.2d at 93-94.
 
 
 20
 2. Other Relevant Factors.
 
 
 21
 While Littleton provided one example of how a proper factual analysis could justify a foreclosure sale price of less than 70% of market value, we did not suggest in Littleton that the satisfaction of junior liens was the only other important factor bearing upon reasonable equivalency. In fact, Littleton spoke broadly of the role of the trial court, holding that a determination of reasonable equivalency could only be made after an examination of "all the facts and circumstances of each case." 888 F.2d at 93. Granted, the Littleton panel did not clearly expound a list of other important facts. However, the court did provide examples of relevant factors via citation. In this manner the panel indicated that the decisionmaker must consider the bargaining position of the parties to the foreclosure sale, the marketability of the property that is sold, and the fact that prices achieved in foreclosure markets are notoriously lower than prices achieved in other markets. See id. (citing Gillman v. Preston Family Inv. Co. (In re Richardson ), 23 B.R. 434, 448 (Bankr.D.Utah 1982); Adwar v. Capgro Leasing Corp. (In re Adwar ), 55 B.R. 111, 115 (Bankr.E.D.N.Y.1985)).
 
 
 22
 In addition, the Littleton court noted that the fact that the property was sold in the context of a lawful foreclosure proceeding was an important factor because " 'the presumption of reasonableness is with the foreclosing party in the first instance.' " 888 F.2d at 93 (quoting Fargo Biltmore, 49 B.R. at 790). Absent fraud, collusion, or irregular or unlawful procedures, courts should presume that a legitimate foreclosure sale brings a price which is reasonably equivalent to the property's value.[6] This presumption of reasonableness means that the trustee seeking to avoid such a sale pursuant to Section 548 must establish specific factors which undermine confidence in the reasonableness of the foreclosure sale price.
 
 
 23
 One factor rebutting the presumption of reasonableness is, of course, that the foreclosure sale achieved less than 70% of the property's market value. In addition, courts should consider whether or not the foreclosing party obtained a fair appraisal of the property before selling it, the extent to which the foreclosure sale was advertised, and the competitive conditions surrounding the sale (such as the number of serious bidders). See Bundles, 856 F.2d at 824-25. Each of these factors is relevant to the determination of reasonable equivalency. Only a consideration of all the circumstances will fulfill the purpose of Section 548: ensuring that a foreclosing party takes all commercially reasonable steps to recover not only its own interest in the property sold, but also the debtor's equity.
 
 
 24
 3. The Competing Policy Concerns.
 
 
 25
 The totality of the circumstances test, introduced in Littleton and clarified today, best balances the competing policies underlying this area of the law. On the one hand, this court recognizes that mortgage holders must be able to exercise their lawful rights of foreclosure without having to insure losses which result simply because foreclosure property may sell too cheaply. On the other hand, we also realize that allowing commercial entities to ignore equity in foreclosure proceedings undermines one crucial policy of Section 548--ensuring that bankruptcy estates will not be unnecessarily depleted.
 
 
 26
 Nullifying a legitimate foreclosure sale solely because the market for the property sold could not bring 70% of the property's value may advance bankruptcy policy, but it also violates the policy protecting the rights of secured creditors and diminishes the integrity of foreclosure sales. See, e.g., War Eagle Floats, Inc. v. Travis (In re War Eagle Floats, Inc.), 104 B.R. 398, 400-01 (Bankr.E.D.Okla.1989); In re Upham, 48 B.R. 695, 697 (Bankr.W.D.N.Y.1985). Similarly, we allow the interests of secured creditors to trump bankruptcy policy when we give a commercial lender carte blanche to ignore the equity interests of a borrower as long as that lender follows the minimal requirements of state foreclosure law. See, e.g., General Indus., Inc. v. Shea (In re General Indus., Inc.), 79 B.R. 124, 131-32 (Bankr.D.Mass.1987); Ruebeck v. Attleboro Sav. Bank (In re Ruebeck ), 55 B.R. 163, 168 (Bankr.D.Mass.1985).
 
 
 27
 Therefore, it is inappropriate to make either the achievement of a fixed percentage of value or compliance with state foreclosure law the decisive factor. Both of these issues are relevant to the determination of reasonable equivalency, but neither issue is dispositive. Only a thorough analysis of all relevant facts and circumstances can achieve the appropriate balance between the competing interests. See Adwar, 55 B.R. at 115.
 
 
 28
 B. The Inadequacy Of The Reasonable Equivalency Determination In This Case
 
 
 29
 On appeal, C & S argues that both the bankruptcy court and the district court relied too heavily on the Durrett 70% test, ignoring other potentially relevant factors which might have justified the foreclosure sale price even though that price was less than 70% of the property's market value. We agree. At the beginning of the Grissoms' trial, the bankruptcy court told the parties in clear language that their case would be decided on the authority of Durrett and its 70% dictum:
 
 
 30
 I think Durrett's controlling, isn't it, on me? The 5th Circuit unit, you know, it's a 1980, 5th Circuit case.... [T]hat whole issue was, I think, litigated in this [bankruptcy] court in front of Judge Davis in the Littleton case, [82 B.R. 640 (Bankr.S.D.Ga.1988),] which I've got right in front of me.... [A]s a matter of applicable law, I intend to agree with Judge Davis's analysis; he doesn't like it, but we're stuck with ... the 70-percent rule, unless there's--you can show me how the 5th Circuit or the 11th Circuit, now, has overruled or changed that.... Judge Davis said that that's what we're going to follow, that's what we've got.
 
 
 31
 Transcript of Trial at 5-6. Significantly, the Littleton opinion referred to by the bankruptcy court contained the following language:
 
 
 32
 The Debtor's property was sold at the foreclosure sale for $34,917.09 or 63.49% of the fair market value of the property.... I conclude that [the buyer of the property] did not pay the "reasonably equivalent value" as required by Section 548(a)(2)(A). While a 70% rule may seem arbitrary or mechanical, if Durrett is the law, a certain, fixed standard is to be preferred to one which leaves the question of what is "reasonably equivalent value" to a case-by-case analysis.
 
 
 33
 Walker v. Littleton (In re Littleton ), 82 B.R. 640, 643 (Bankr.S.D.Ga.1988). Of course, this statement of the law governing Section 548, approvingly cited to the Grissoms and to C & S prior to their trial, is exactly the position this court rejected well before the bankruptcy court's final resolution of the Grissoms' case. See Walker v. Littleton (In re Littleton ), 888 F.2d 90 (11th Cir.1989).
 
 
 34
 The parties were obviously influenced by the bankruptcy court's erroneous reading of Durrett. Moreover, the parties could not benefit from this court's clarification of the law in Littleton because we did not decide Littleton until two months after their trial. Quite understandably, then, the evidence at trial focused on the market value of the Grissoms' residence, as both parties attempted to fit within the framework of Durrett. Other than this evidence relating to the 70% guideline, there was little or no evidence presented regarding the trustee's ultimate burden under Section 548--proving that the sale price obtained at the bank's lawful foreclosure sale was nevertheless not the reasonable equivalent of the property's value.
 
 
 35
 After the conclusion of the trial and nearly three months after this court decided Littleton, the bankruptcy court issued its decision in the Grissom matter. The bankruptcy court had little trouble calculating the bank's shortcomings under the Durrett 70% guideline. However, when it attempted to analyze the other relevant factors as mandated by Littleton, the court only offered that it could find "no basis for a determination that the foreclosure sale now before the court brought the debtor the reasonably equivalent value of the property." Order and Judgment of the Bankruptcy Court at 9, Exhibits Vol. 1. That conclusion is hardly surprising in light of the fact that the parties presented scant evidence on the question.
 
 
 36
 Obvious conclusions are not always legally sound. In this case, the bankruptcy court's conclusion misstates the relevant burden of proof. Foreclosure sales are not presumed to bring unreasonable prices when the foreclosing party fails to prove otherwise. In fact, the opposite is true. Lawful foreclosure sales are presumed to bring the reasonably equivalent value of the debtor's property unless the trustee proves other circumstances to rebut that presumption. See Littleton, 888 F.2d at 93; Bundles, 856 F.2d at 824. Therefore, given the evidence presented by the parties at trial, the bankruptcy court should have concluded that it could find no basis for a determination that the foreclosure sale now before the court did not bring the debtor the reasonably equivalent value of the property. By influencing the presentation of evidence by the parties and then misstating the relevant burden of proof in order to hold for the Grissoms, the bankruptcy court committed clear error. To the extent that the district court affirmed these conclusions of the bankruptcy court, it erred as well.
 
 C. The Appropriate Resolution Of This Case
 
 37
 To determine whether or not the Grissoms can avoid the foreclosure sale of their residence because the sale price was not the reasonable equivalent of the property's market value, we must necessarily examine all relevant facts and circumstances surrounding the foreclosure. However, the record developed before the bankruptcy court is very sparse. We know that C & S complied with Georgia foreclosure law. We know that the foreclosure sale was advertised four times. In addition, there was a gratuitous comment by the buyer of the property, Birnet Johnson, that "there were many bidders [at the foreclosure sale]." Transcript of Trial at 54. Beyond these observations, however, the record contains no findings regarding the circumstances surrounding the foreclosure sale. We cannot even conclusively determine whether or not C & S had a fair appraisal of the Grissoms' property before the sale.
 
 
 38
 Upon this record, we are incapable of determining whether or not the foreclosure sale price was the reasonable equivalent of the property's value. Upon the evidence presented at trial, a court could not accurately decide whether or not the bank took the reasonable commercial steps necessary to ensure that the foreclosure proceedings attempted to protect the debtor's equity in the property. The record is largely silent regarding the bank's efforts to ascertain the value of the property it planned to sell, the nature and type of the advertising of the sale, the number of serious bidders at the foreclosure sale, and any other competitive conditions surrounding the sale.[7] Therefore, it is impossible to decide whether or not the Grissoms could persuade the bankruptcy court " 'by the totality of the evidence that the sale price was not the reasonably equivalent value of the property.' " Littleton, 888 F.2d at 93 (quoting Fargo Biltmore, 49 B.R. at 790).
 
 
 39
 Ordinarily, under these circumstances the Grissoms would lose. After all, sale prices obtained at regularly conducted, non-collusive, lawful foreclosure sales are presumed to be reasonably equivalent values, unless the bankruptcy trustee establishes otherwise. See id. Under usual circumstances, establishing a violation of the Durrett 70% test is, standing alone, insufficient to make the foreclosure sale avoidable under Section 548. However, we are convinced that for this case such an outcome would be manifestly unfair. The parties cannot be faulted for the evidentiary choices they made at trial. After all, the bankruptcy court clearly revealed its intention to abide by the 70% dictum of Durrett. Moreover, we cannot expect the parties to be so prescient as to foresee the eventual result in Littleton, which was, after all, an unusual case in which to announce an "all facts and circumstances" rule. Therefore, this court feels that justice would be better served by vacating the bankruptcy court and district court orders and remanding the case to the district court for further proceedings consistent with this opinion. Only in this way will the Grissoms have a full and fair opportunity to prove that $14,059 was not the reasonably equivalent value of their residence, despite the legitimacy of the foreclosure proceedings.[8]
 
 III. CONCLUSION
 
 40
 Durrett 's 70% dictum provided an easy way for trial courts to determine reasonable equivalency. However, no longer should it be mistaken as the law of this circuit. The only proper way to determine reasonable equivalency under Section 548 is to conduct a thorough inquiry of all relevant facts and circumstances. Only in this manner do we provide adequate deference to state foreclosure proceedings and the rights of secured creditors, without unduly trammeling upon the policies of the bankruptcy laws. Because it is obvious that the record in this case was tainted by significant errors, we VACATE both lower court orders and REMAND the case to the district court for further proceedings.
 
 
 41
 VACATED and REMANDED.
 
 
 
 *
 Honorable Albert J. Engel, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 The Grissoms also argued that the foreclosure sale violated the automatic stay mandated by 11 U.S.C. § 362 (1988) because the bank completed the transaction after the Grissoms filed for bankruptcy protection. The bankruptcy court rejected this argument. The Grissoms have not appealed that determination
 
 
 [2]
 Although the Johnsons were also named as defendants in the Grissoms' complaint, they did not file an answer. The bankruptcy court awarded the Grissoms a default judgment as to the Johnsons. The Johnsons are not a party to this appeal
 
 
 [3]
 C & S challenges this figure. We must accept the bankruptcy court's findings of fact unless clearly erroneous. Dooley v. Weil (In re Garfinkle ), 672 F.2d 1340, 1344 (11th Cir.1982). The $26,000 figure was supported by substantial evidence: the tax card, another appraisal, and the testimony from Jeanette Grissom. Johnson's self-serving testimony about the value of the residence fails to diminish our confidence in the bankruptcy court's determination of market value
 C & S also argues that the tax card was inadmissible as hearsay. C & S did not object to the admission of the tax card at trial. See Transcript of Trial at 51-52. Therefore, because admission of the tax card was not plain error, we will not adjudicate the issue on this appeal. See Wilson v. Attaway, 757 F.2d 1227, 1242 (11th Cir.1985).
 
 
 [4]
 Section 550 provides:
 [T]o the extent that a transfer is avoided under section ... 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from the initial transferee of such transfer or the entity for whose benefit such transfer was made.
 11 U.S.C. § 550(a)(1) (1988). The bankruptcy court ruled that the bank was a beneficial entity of the foreclosure sale. Therefore, the court held that the Grissoms could recover from
 C & S the value of the property sold.
 
 
 [5]
 The district court also agreed that C & S was a beneficial entity within the meaning of Section 550(a)(1)
 
 
 [6]
 Some courts conclusively presume reasonable equivalency under these circumstances. See, e.g., Lawyers Title Ins. Corp. v. Madrid (In re Madrid ), 21 B.R. 424, 426-27 (Bankr. 9th Cir.1982), aff'd on other grounds, 725 F.2d 1197 (9th Cir.), cert. denied, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984). We did not go this far in Littleton and decline to do so today
 
 
 [7]
 C & S also contends that the foreclosure sale extinguished junior liens, making this case similar to Littleton. We have examined the record on this point. Our review could not determine the extent to which the Grissoms actually benefitted from the elimination of junior liens. Therefore, this argument by the bank has not influenced our disposition of this case
 
 
 [8]
 C & S also contests the determination that it is a beneficial entity within the meaning of 11 U.S.C. § 550(a)(1) (1988). We agree with the bankruptcy court and the district court that the statutory language is not ambiguous. The Grissoms can recover the value of their property from the party who benefits from the foreclosure sale. Id. The authorities cited by C & S are admittedly cases in which parties other than foreclosing banks were found to be beneficial entities. However, those cases do not foreclose the possibility that a bank in C & S's position can also be covered by Section 550(a)(1) if that bank benefits from a fraudulent foreclosure sale. Here, C & S clearly benefitted by satisfying the note for which the Grissoms would otherwise have been liable
 Nor are we persuaded by the bank's equity attacks upon Section 550. We admit that a remedy which requires a foreclosing bank to satisfy the amount of equity lost in a foreclosure sale is somewhat stringent. But such a bank is not without protection. Under normal circumstances, following the commercially reasonable steps to protect equity will adequately safeguard the bank's interests, even if, through no fault of the bank, the foreclosure sale fails to bring a price of at least 70% of the market value of the property. Moreover, equitable principles are insufficient to trump the clear remedial provisions of a bankruptcy statute. Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206-07, 108 S.Ct. 963, 968-69, 99 L.Ed.2d 169 (1988).