**In re Brigido GUTIERREZ and Yolanda Gutierrez, Debtors.**

**Brigido GUTIERREZ and Yolanda Gutierrez, Plaintiffs,**

v.

**LOMAS MORTGAGE and Citicorp Acceptance Corp., Defendants.**

**Bankruptcy No. 92–54338–RBK. Adv. No. 93–5008–RBK.**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

Oct. 29, 1993.

---

Heidi McLeod, San Antonio, TX, for debtors/plaintiffs, Brigido Gutierrez and Yolanda Gutierrez.

Keith P. O'Gorman, San Antonio, TX, for creditors/defendants, Lomas Mortg. and Citicorp Acceptance Corp.

## OPINION

RONALD B. KING, Bankruptcy Judge.

This is an action to avoid a fraudulent transfer under section 548 of the Bankruptcy Code.[1] The Debtors seek to set aside a foreclosure sale of their homestead, claiming that the price paid at the foreclosure sale did not constitute "reasonably equivalent value" under section 548(a)(2)(A).

Citicorp Acceptance Corporation (Citicorp), the mortgagee, conducted a nonjudicial foreclosure sale of the Debtors' homestead on December 1, 1992. Citicorp bid $27,000 at the sale, leaving a note deficiency of $7,335.95, which Citicorp later waived. Only Citicorp bid at the sale. There is no evidence that the sale was collusive or irregular in any way. The Debtors filed for relief under Chapter 13 of the Bankruptcy Code on the next day, December 2, 1992, and filed this adversary proceeding to set aside the sale.[2]

The Debtors assert that the fair market value of the property at the time of the sale was $41,000. Citicorp claims the value was $37,000.[3] Credible appraisals support both

analogy to the docketing and scheduling of hearing settings is fairly close.

1. 11 U.S.C. § 548 (1988). Title 11 is referred to herein as the Bankruptcy Code. Because this adversary proceeding was filed by the Chapter 13 Debtors rather than the Trustee, it arises under section 522(h), which allows the Debtors to avoid certain transfers of exempt property under avoidance provisions including section 548. *Willis v.*

*Borg–Warner Acceptance Corp. (In re Willis),* 48 B.R. 295, 298–300 (S.D.Tex.1985).

2. Although named as a Defendant, Lomas Mortgage was merely the mortgage servicer.

3. Citicorp has submitted a written appraisal in the amount of $37,000 as of February 4, 1993. Citicorp's appraiser indicated, however, that his appraised value would also be effective on December 1, 1992.

claims. At these values the $27,000 sale price was, respectively, approximately 66 or 73 percent of the fair market value.

Two questions must be decided:

1. Whether Citicorp's post-foreclosure release of its deficiency claim constituted additional "value" or consideration for purposes of section 548(a)(2)(A); and

2. Whether Citicorp paid reasonably equivalent value under section 548(a)(2)(A).

## I. Deficiency Claim Waiver.

### A. Timing of the Release.

■■■■ The post-foreclosure sale release of a deficiency claim cannot automatically validate a transfer for less than reasonably equivalent value. For purposes of section 548, a transfer of the property for less than reasonably equivalent value must be determined *at* the time of the transfer. *Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.)*, 914 F.2d 458, 466 (4th Cir.1990); 4 COLLIER ON BANKRUPTCY ¶ 548.09 at 116 (Lawrence P. King, et al. eds., 15th ed. 1993) (critical time is when the transfer is "made"). The transfer here occurred on the day of the foreclosure sale. *Durrett v. Washington Nat'l Ins. Co.*, 621 F.2d 201, 204 (5th Cir.1980) (foreclosure sale cuts off debtor's right of possession and effectuates a transfer under Bankruptcy Act); *see* 11 U.S.C. § 101(58)[54] (Supp. IV 1992) ("transfer" is defined very broadly); 11 U.S.C. § 548(d)(1) (1988).[4] Citicorp's release occurred *after* the transfer. Thus, Citicorp's subsequent release of the deficiency claim

did not affect whether the transfer was for less than reasonably equivalent value.

### B. Policy.

The post-foreclosure sale release of a deficiency claim should not constitute value for purposes of section 548(a)(2)(A). The purpose of section 548 is to preserve the bankruptcy estate for the benefit of creditors and the debtor by preventing buyers from paying less than reasonably equivalent value. *Bundles v. Baker (In re Bundles)*, 856 F.2d 815, 824 (7th Cir.1988). Allowing "credit" for the subsequent waiver of a deficiency claim would defeat this purpose. By waiver, Citicorp attempts to trade an unsecured deficiency claim, which is unlikely to produce much benefit, for validation of its ownership of the foreclosed property. If the court were to approve such a transaction, a mortgage creditor could routinely bid as low as possible at its own foreclosure sale to maximize its deficiency claim, and then after the sale waive its deficiency claim, if necessary, to prevent avoidance of the sale under section 548. The Bankruptcy Code does not support maximization of deficiency claims at the expense of debtors, with a "failsafe" mechanism available to the mortgagee in the event the foreclosure sale is questioned.[5]

## II. Reasonably Equivalent Value.

The dispositive issue is whether, absent some credit for waiving its deficiency claim, Citicorp's payment of $27,000 for the Debtors' home constituted reasonably equivalent

---

**4.** 11 U.S.C. § 548(d)(1) (1988) reads:

> For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of filing of the petition.

Under section 548(d)(1), a transfer occurs when property transferred is perfected against bona fide purchasers. State law governs perfection. *Butler v. Lomas & Nettleton Co.*, 862 F.2d 1015, 1018 (3d Cir.1988); 4 COLLIER ON BANKRUPT-

CY ¶ 548.08 (Lawrence P. King, et al. eds., 15th ed. 1993). Perfection of the transfer under state law was not in dispute in this case.

**5.** An interesting question not raised by the parties is the effect of the Texas deficiency statute, TEX PROP.CODE ANN. § 51.003 (Vernon Supp.1993), which allows credit against a foreclosure sale deficiency claim for the fair market value of the property less the sale price. With a similar statute and fact situation, a Pennsylvania district court held that there was no fraudulent transfer, even though the mortgagee bid one dollar, because the fair market value was $31,000 and $29,000 in debt was extinguished by the Deficiency Judgment Act. *Brunell v. Federal Nat'l Mortgage Ass'n (In re Brunell)*, 76 B.R. 64 (E.D.Pa.1985).

value under section 548. The Court finds that it did.

The Debtors failed to sustain their burden of proof. The person challenging a transfer as fraudulent under section 548 bears the burden of proof on all of the necessary elements, including the inequivalency of value. *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1494 (5th Cir.1993); *Bustamante v. Johnson (In re McConnell)*, 934 F.2d 662, 665 n. 1 (5th Cir.1991). The standard of proof for avoidance actions is preponderance of the evidence. *Consolidated Partners Inv. Co. v. Lake*, 152 B.R. 485, 488 (Bankr.N.D.Ohio 1993); *see Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Two credible appraisals of the value of the property foreclosed upon have assessed the fair market value of the house at somewhere between $37,000 and $41,000, making the price paid between 66 and 73 percent of fair market value. Even at the lower valuation, however, the Debtors have not shown why a foreclosure sale at 66 percent of fair market value should *automatically* be rejected as not reasonably equivalent.

Many bankruptcy cases have used the "Durrett rule" to invalidate any transfer for less than 70 percent of fair market value. *See, e.g., Willis v. Borg–Warner Acceptance Corp. (In re Willis)*, 48 B.R. 295, 300–01 (S.D.Tex.1985); *Federal Nat'l Mortgage Ass'n v. Wheeler (In re Wheeler)*, 34 B.R. 818, 821 (Bankr.N.D.Ala.1983). In *Durrett*, a Fifth Circuit panel held that a foreclosure sale which brought only 57.7 percent of the fair market value of the debtor's property was avoidable as a fraudulent transfer. Although the panel reviewed the "entire evidence," it wrote only about the disparity between the sale price and the fair market value, stating in dicta that it had found no case in which a transfer for less than 70 percent of market value had been approved. 621 F.2d at 203–04. Subsequent Fifth Circuit opinions, questioning the mechanical application of only the disparity in sales price and fair market value, lead this court to believe that the Fifth Circuit has not adopted a mechanical, one factor analysis in the determination of reasonably equivalent value. *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1495 n. 14 (1993); *FDIC v. Blanton*, 918 F.2d 524, 531–32 n. 7 (5th Cir.1990). Indeed, most circuits have rejected a mechanical application of *Durrett*, although courts split over what legal standard to apply to ascertain reasonably equivalent value.[6] Several courts have found the existence of reasonably equivalent value where the foreclosure sale price accounted for less than 70 percent of the fair market value. *Walker v. Littleton (In re Littleton)*, 888 F.2d 90, 92 (11th Cir.1989), *reh'g denied*, 890 F.2d 1167 (11th Cir.1989) (63.5% of fair market value); *In re Barrett*, 118 B.R. 255, 256 (E.D.Pa. 1990), *aff'd sub nom. Barrett v. Commonwealth Fed. Sav. & Loan Ass'n (In re Barrett)*, 939 F.2d 20 (3d Cir.1991) (69.5%); *Hussey v. Haider (In re Haider)*, 126 B.R. 796, 798–99 (Bankr.D.Mont.1991) (62%). Thus, the *Durrett* dicta suggesting a 70 percent minimum does not, by itself, control this case.

Other factors which should be considered relate to the commercial reasonableness of the sale. These factors include the identity and number of bidders, the liquidation value of the property and the good

---

**6.** Most circuits addressing the issue have employed a case-by-case approach, considering all of the relevant facts. *Grissom v. Johnson (In re Grissom)*, 955 F.2d 1440, 1445 (11th Cir.1992); *Barrett v. Commonwealth Fed. Sav. & Loan Ass'n (In re Barrett)*, 939 F.2d 20, 23–24 (3d Cir.1991); *Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.)*, 914 F.2d 458, 467 (4th Cir.1990); *Bundles v. Baker (In re Bundles)*, 856 F.2d 815, 824 (7th Cir.1988); *see also Weinman v. Simons (In re Slack–Horner Foundries Co.)*, 971 F.2d 577, 584 (10th Cir.1992) (dissent advocating a case-by-case approach, majority not reaching the issue). This approach creates a rebuttable presumption that state law fore-

closure proceedings deliver a property's reasonably equivalent value. *In re Bundles*, 856 F.2d at 824. The trustee may rebut that presumption and the bankruptcy court should "examine the foreclosure transaction in its totality." *Id.*

Two circuit courts have held that a non-collusive, regularly conducted foreclosure sale establishes reasonably equivalent value as a matter of law. *BFP v. Imperial Sav. & Loan Ass'n (In re BFP)*, 974 F.2d 1144, 1148 (9th Cir.1992), *cert. granted*, —— U.S. ——, 113 S.Ct. 2411, 124 L.Ed.2d 635 (1993); *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1139 (6th Cir.1985). The United States Supreme Court may soon resolve the *Durrett* controversy in *BFP*.

faith of the transferee. *See* 2 DAVID G. EP-STEIN ET AL., BANKRUPTCY ¶ 6–56, at 89–90 (1992). Here, the mortgagee was the only bidder at the sale. While the fact that the mortgagee was the only bidder might suggest a less than commercially reasonable sale, the reality is that the mortgagee is often the only bidder at a residential real property foreclosure sale. *See Barrett*, 939 F.2d at 24 (bankruptcy court should compare sale and sale price to typical foreclosure sale rather than to a typical private sale). Pragmatic considerations, such as possible legal challenges to ownership (such as this one), marketability of the property, the requirement of cash in order to bid, lack of information, or a depressed market, rather than legal restraints, prevent the creation of a true market demand or a bidding competition. Thus, the sale does not appear to have been commercially unreasonable.

Liquidation value should also be a consideration in a foreclosure sale. *Bundles*, 856 F.2d at 824 ("the fact that the sale was the result of a foreclosure rather than an arm's length transaction between a willing buyer and a willing seller is also of considerable importance"). Liquidation value refers to the value that one can receive from a quick disposition of property. It depends more on the amount of time available to sell than on market demand. Like most foreclosure sales, this sale did not allow the seller sufficient time to obtain the best price possible in an arm's length transaction. But for the immediate need to transform a non-producing asset into a producing asset, Citicorp might otherwise have obtained a higher price. Citicorp, like most lenders, has no desire to be a residential real estate owner.

The good faith of the transferee also warrants consideration. *Littleton*, 888 F.2d at 94. Citicorp did not display bad faith in its attempt to dispose of the property. Citicorp waited six months before providing proper notice, accelerating the debt and conducting a non-collusive sale in the regular course of business. The Debtors presented no evidence of commercial unreasonableness other than the difference between the fair market value and the price paid. Moreover, in open court Citicorp offered to resell the property

to the Debtors for the amount of the debt ($35,443), waiving trustee's fees and interest. This, of course, may have been a hollow offer because it is unlikely that the Debtors could obtain the financing necessary to repurchase the home. Nonetheless, Citicorp made the offer and would have given up its right to trustee's fees, interest, and any potential equity in the property upon resale. As such, Citicorp has displayed good faith in its attempts to dispose of the home.

Thus, the difference between the purchase price and the fair market value, when considered in light of the other factors affecting value, is not sufficient to set aside this regularly conducted, non-collusive state law foreclosure sale. The Debtors have failed to show that the inequivalency of value was unreasonable. Therefore, the price Citicorp paid at the foreclosure sale was reasonably equivalent value for purposes of section 548(a)(2)(A).

### III. Conclusion.

Based on the foregoing, judgment will be rendered for Citicorp that Plaintiffs take nothing. This Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to FED.R.BANKR.P. 7052. A take nothing judgment will be rendered contemporaneously herewith.