**In re Jesse A. CALVILLO, Debtor.**

**John Patrick Lowe, Trustee,
Plaintiff–Appellant,**

**v.**

**B.R.B. Enterprises, Ltd., a Partnership,
et al., B.G.B. Construction, Inc., a
Georgia corporation, and La Flama,
L.L.C., Defendants–Appellees.**

Bankruptcy No. 96–55458.
Adversary No. 97–5212–RBK.
Civ.A. No. SA–99–CA–205–OG.

United States District Court,
W.D. Texas,
San Antonio Division.

Sept. 29, 2000.

Micheal G. Colvard, Martin, Drought & Torres, San Antonio, TX, for appellant.

Eric J. Taube, Hohmann & Taube, L.L.P., Austin, TX, for B.R.B. Enterprises, Ltd., B.G.B. Construction, Inc.

Raymond W. Battaglia, Oppenheimer, Blend, Harrison & Tate, Inc. San Antonio, TX, for La Flama, L.L.P.

## ORDER AFFIRMING BANKRUPTCY COURT'S RULING

ORLANDO L. GARCIA, District Judge.

This is an appeal of two orders of the Bankruptcy Court granting summary

judgment in favor of Defendants BRB Enterprises, Ltd., BGB Construction, Inc., and La Flama, L.L.C.[1], and two orders denying the Chapter 7 Trustee's motions for reconsideration[2], in an adversary proceeding brought by the Trustee to avoid an allegedly fraudulent transfer pursuant to 11 U.S.C. § 548 and the Texas Fraudulent Transfer Act, § 24.001, et seq., Tex.Bus. & Com.C. The Trustee filed a motion for leave to appeal under Rule 8003, Fed. R.Bank.Proc., characterizing the Bankruptcy Court's orders as interlocutory because the Defendants' counter-claims for attorneys' fees and costs are still pending in the adversary proceeding. The Trustee's motion for leave to appeal was granted[3]. The Court has jurisdiction of this appeal under 28 U.S.C. § 158(a)(1), (3).

### I. Procedural History.

This adversary proceeding arises out of a Chapter 7 bankruptcy filed by Jesse and Carmen Calvillo ("Debtors"), founders of a well-known Mexican restaurant in San Antonio, Texas, known as "La Fogata." In December 1995, in an effort to obtain emergency financing to prevent foreclosure by the IRS, the Debtors and CEI, a Texas corporation whose sole shareholders are the Debtors[4], entered into an agreement with Defendants BRB Enterprises and BGB Construction to sell the real property on which La Fogata was located and its personal property and business assets (the "Property") for a cash price of $400,000,[5] plus other consideration. The Property was sold to BRB/BGB subject to approximately $850,000 in existing liens and encumbrances. The sale was made subject to a lease-back agreement under which the Debtors would lease the restaurant premises and business assets from BRB/BGB for three years at a base monthly rent of $10,000. In addition to the $400,000, and the lease-back agreement, the Debtors received a repurchase option which could be exercised at any time during the three-year lease term, contingent on there being no defaults under the lease agreement[6]. To exercise the repurchase option the Debtors were to provide BRB/BGB with a promissory note for a principal amount of $530,000[7]. Debtors defaulted on the lease-back agreement during the first year, and BRB/BGB seized the Property in January 1997. The repurchase option was never exercised due to the Debtors' default under the lease. The Debtors subsequently filed Chapter 7 bankruptcy in December 1996.

1. B.R. # 131, 145.

2. B.R. # 149, 150.

3. See the Court's order entered May 12, 1999, finding that the summary judgment orders were final orders appealable under § 158(a)(1) because the attorneys' fees claims were collateral to the merits, but alternatively granting leave to appeal under Rule 8003 and § 158(a)(3).

4. In this opinion, the Court's references to "Debtors" are intended to include CEI where applicable.

5. A $100,000 cashier's check, which was part of the $400,000, was paid to Debtors prior to consummation of the sale. The Debtors used the $100,000 to pay part of their tax debt in an amount sufficient to lift the IRS's seizure and reopen the restaurant.

6. Contrary to the Trustee's assertion that the option could only be exercised at the end of the three-year lease term, based on a stated closing date of January 1, 1999, in the option agreement, the option agreement does not prohibit the Debtors from exercising the option prior to January 1, 1999, as long as they were not in default under the lease. There is no penalty provided for exercising the option before January 1, 1999.

7. The note was to be paid over 15 or 16 years (the record is not clear), at 18% interest per annum. The terms of the financing were already negotiated and committed through an affiliate of BRB/BGB.

On January 6, 1997, BRB/BGB sold the Property to Defendant La Flama in exchange for a $1,000,000 promissory note and a 15% equity interest in La Flama. This transfer was made while an adversary action by the Debtors was pending against BRB/BGB in the underlying bankruptcy proceedings; the adversary action by the Debtors was subsequently dismissed because the fraudulent transfer cause of action had to be brought by the Trustee.

The Trustee then filed an adversary proceeding seeking to set aside the Debtors' transfer of the Property to BRB/BGB as fraudulent, *i.e.*, for less than fair and equivalent value, under § 548(a)(1)(B) of the Bankruptcy Code and § 24.005(a)(2) [8] of the Texas Fraudulent Transfer Act ("TFTA"). See, § 24.001, et seq., Tex.Bus. & Com.C. The Trustee also sought to set aside BRB/BGB's subsequent transfer of the Property to La Flama as a mediate transferee under § 550 of the Bankruptcy Code. The Trustee alleged that the repurchase option had no economic value for purposes of determining whether the transfer of the Property to BRB/BGB was for reasonably equivalent value because the Debtors were not financially able to exercise the option, the option was contingent on completion of the three-year lease with no defaults, and the value of the Property transferred exceeded the value of the $400,000 cash consideration received by the Debtors.

Defendants BRB Enterprises and BGB Construction [9] jointly moved for summary judgment on the Trustee's avoidance action arguing that there was no issue of material fact as to whether the total consideration received by Debtors, consisting of the $400,000, plus the lease-back agreement and the value of the repurchase option, constituted reasonable equivalent value. BRB/BGB argued that the value of the repurchase option was determined as a matter of law by deducting the stated repurchase price of $530,000 from the fair market value of the Property. Using that calculation for the value of the option, and factoring in the below-market rental value of the lease and the $400,000 cash, BRB/BGB assert that the Debtors received reasonable equivalent value. The Trustee provided summary judgment evidence through two experts who testified that the repurchase option had no economic value, or a negative value, due to the oppressive financial conditions imposed by the lease-back and repurchase agreements. The Trustee's experts estimated the value of the Property at $1,450,000 [10].

On September 16, 1998, the Bankruptcy Court held a lengthy hearing on the Defendants' motions for summary judgment. Concluding that the Defendants' motions should be granted, the Bankruptcy Court found that Debtors received a reasonable equivalent value for the Property. The Bankruptcy Court ruled that the repurchase option had value, and that the value of the option was to be determined by deducting the $530,000 option price from the fair market value of the Property [11].

---

8. Section 24.005(a)(2) of the Texas Fraudulent Transfer Act contains the same requirement of reasonably equivalent value as § 548(a)(1)(B) of the Bankruptcy Code.

9. Defendant La Flama was permitted to join in BRB/BGB's summary judgment motion. See, B.R. # 145.

10. The record contains contradictory evidence of the value of the Property. The Defendants–Appellees BRB/BGB assume, *arguendo*, in their brief that the Trustee's valuation of $1,450,000 is correct. The Trustee did not object to use of this $1,450,000 figure in his reply brief. The Court will therefore use the $1,450,000 figure for the value of the Property in its opinion.

11. B.R. # 139 at 5–6.

Using that formula for valuation of the option, the court found that there was reasonable equivalent value for purposes of § 158 of the Bankruptcy Code [12] and the TFTA. In its subsequent order permitting La Flama to join in BRB/BGB's summary judgment motion, the Bankruptcy Court found that La Flama was not the mediate or immediate transferee [13] of the Property, and that summary judgment in its favor was thus appropriate [14].

The Trustee filed a motion for reconsideration of each of the orders granting summary judgment for the Defendants. The Bankruptcy Court denied both motions. The Trustee now appeals the granting of summary judgment for Defendants and the denial of its motions for reconsideration. This Court discerns no reversible error and affirms.

## II. *Issues.*

### A. *Standards of Review.*

■■■ This Court may not set aside a Bankruptcy Court's factual findings unless clearly erroneous. Bankr.R. 8013. Its legal conclusions, however, are subject to *de novo* review. *See Shurley v. Texas Commerce Bank–Austin, N.A. (In re Shurley)*, 115 F.3d 333, 336 (5th Cir.1997); *Davis v. Davis (In re Davis)*, 105 F.3d 1017, 1019 (5th Cir.1997). Since the primary question framed by this appeal is whether the Bankruptcy Court erred in granting summary judgment for Defendants on the Trustee's avoidance claims, an issue of law, the Court reviews the Bankruptcy Court's rulings on that question *de novo*. *In re Intelogic Trace, Inc.*, 200 F.3d 382, 385 (5th Cir.2000). The Bankruptcy Court's

findings of fact underlying its legal ruling on the summary judgment motions will be reviewed for clear error only. Finally, denial of a motion for reconsideration, or new trial, is a matter within the trial court's discretion. The Court therefore reviews that aspect of the Bankruptcy Court's ruling for abuse of discretion. *Ford Motor Credit Co. v. Bright*, 34 F.3d 322, 324–325 (5th Cir.1994).

### B. *Grant of Summary Judgment.*

Under Rule 56(b), Fed.R.Civ.P., and Rule 7056, Fed.R.Bank.Proc., a party may move for summary judgment at any time, with or without supporting affidavits. Rule 56(c) allows summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All reasonable doubts and inferences must be decided in the light most favorable to the party opposing the motion, *Hibernia National Bank v. Carner*, 997 F.2d 94, 97 (5th Cir.1993), and as long as there appears to be some evidentiary support for the disputed allegations, the motion must be denied. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir.1981) (en banc).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, along with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

---

12. The Bankruptcy Court also found that the challenged exhibits would make no difference to its ruling if admitted and considered by the court. B.R. # 139 at 3. The Trustee does not raise any argument on appeal with respect to those exhibits.

13. The Trustee's ability to recover the Property from a mediate or immediate transferee under § 550(a) of the Bankruptcy Code is dependent on avoidance of the transfer under § 548. 11 U.S.C. § 550(a).

14. B.R. # 145.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmovant bears the burden of proof on a claim upon which summary judgment is sought, the movant may discharge its summary judgment burden by showing that there is an absence of evidence to support the nonmovant's case. *Id.* at 325, 106 S.Ct. 2548. Once the movant satisfies this burden, the nonmovant must then oppose the motion by going beyond the pleadings and presenting affirmative evidence through its own affidavits or by depositions, answers to interrogatories, and admissions on file designating specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. *See also, Anderson,* 477 U.S. at 256–257, 106 S.Ct. 2505. Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

After independently reviewing the record, in the light most favorable to the nonmovant Trustee, the Court concludes that no genuine issue of material fact precluded summary judgment for Defendants in this case. Fed.R.Civ.P. 56(c). On appeal, the Trustee re-urges the same arguments and authorities that he presented to the Bankruptcy Court in his response to the summary judgment motions and motions for reconsideration. The Court has reviewed *de novo* the issue of whether the Debtors received reasonably equivalent value for the Property; the Bankruptcy Court's factual findings underlying its valuation determination have been reviewed for clear error. *See, In re Fairchild Aircraft Corp.,* 6 F.3d 1119, 1125 (5th Cir.1993). Finding no error, and agreeing with the Bankrupt-

cy Court's conclusion, this Court affirms the entry of summary judgment in favor of Defendants.

■ The main issue in this appeal is whether the Bankruptcy Court erred in finding that Defendants BRB/BGB gave reasonably equivalent value for the Property for purposes of § 548 of the Bankruptcy Code and § 24.005 of the TFTA. The $400,000 of cash consideration given to the Debtors is undisputed. The question of reasonable equivalent value turns on the value of the repurchase option, which when added to the $400,000 and the value of the lease equals the total consideration received by the Debtors in exchange for the Property. The Trustee presented expert testimony that the repurchase option had no economic value to the Debtors because the Debtors were, practically speaking, financially unable to exercise the option, as evidenced by their quick default under the lease. The Trustee argues that since exercise of the option was dependent on completion of the three-year lease term [15] with no defaults, once the Debtors defaulted, they had no hope of ever exercising the option and it thus had no value. The Trustee's argument is based on hindsight, and is thus flawed, since valuation of the consideration received by the debtor must be made as of the date of the transaction. *In re Gutierrez,* 160 B.R. 788, 790 (Bankr. W.D.Tex.1993); *see also, Fairchild,* 6 F.3d at 1125–1126 (debtor's decision to enter into transaction must be evaluated as of the time decision was made and during time it was implemented). Therefore, the appropriate value of the option for purposes of determining reasonable equivalent value is the option's original value at the time of the sale of the Property, without any "discounting" based on the Debtors' subsequent default.

---

**15.** The Court has already stated that this is incorrect, since the option agreement did not prohibit exercise of the option before January 1, 1999.

■ The Trustee also argues that the Debtors did not receive reasonably equivalent value for the Property because the value of what went out, *i.e.*, the value of the Property, exceeded the value of what came in, *i.e.*, the total consideration. The Trustee is correct in stating that a determination of reasonably equivalent value requires a comparison of the value of what went out with the value of what came in. *In re Southmark Corp.*, 138 B.R. 820, 829 (Bankr.N.D.Tex.1992). However, in computing the value of "what came in," the Trustee only considers a portion of the total consideration received by the Debtors, the $400,000 cash, and assesses no economic value at all to the repurchase option or the lease. As noted by Defendants BRB/BGB, the Trustee's expert opined that the monthly rent charged under the lease-back agreement was below market rate [16]. The key issue then becomes whether the value of the $400,000 cash plus the value of the option was reasonably equivalent to the value of the Property at the time of the transaction.[17]

■ The courts have recognized that valuation considerations are inherently fact-laden, turning on the case-specific circumstances surrounding the debtor's decision to enter into the challenged transaction. *Fairchild*, 6 F.3d at 1125, n. 5 (citing *In re Bundles*, 856 F.2d 815, 824–825 (7th Cir.1988)). There is no set minimum percentage or monetary amount necessary to constitute reasonably equivalent value, and there need not be a dollar-for-dollar exchange in order to constitute reasonably equivalent value. *Id.*, at 1125–1126. In addition, an economic benefit may flow from a debtor's ability to keep his business in operation as a result of his entering into the challenged transaction. Such an economic benefit is considered value for purposes of § 548. *See, Fairchild*, 6 F.3d at 1126–1127 (holding that economic benefits to Chapter 11 debtor-aircraft manufacturer from keeping its affiliate in operation by making payments for fuel to supplier of affiliate was "value" for fraudulent transfer purposes under § 548).

■ The Court finds that the summary judgment evidence shows that the repurchase option did indeed have an economic value to the Debtors, as of the time of the transaction. The Court agrees with the Bankruptcy Court that the summary judgment evidence shows the face value of the option is to be computed by subtracting the fixed exercise price of $530,000 from the $1,450,000 [18] value of the Property, for a value of $920,000. The value of the option must then be added to the $400,000 cash consideration to determine the total value of "what came in" in exchange for the Property. Comparing the $1,450,000 value of the Property with the total consideration of $1,320,000 ($920,000 + $400,000), the two values are clearly reasonably equivalent. In addition, the Court finds the Debtors received economic value from the transaction as a whole because it enabled them to retain possession of the premises and to continue operating the restaurant. *Fairchild*, 6 F.3d at 1126–1127. The Court concludes that, viewed at the time of the transaction, the Debtors received reasonable equivalent value for the Property.

16. Thus, Debtors were receiving a benefit under the lease by retaining possession and use of the Property at a rental rate below, the market rate.

17. The Court notes that BRB/BGB state they acquired the Property subject to $850,000 in existing liens and encumbrances, which must be considered in valuing the Property. Trustee does not dispute that assertion.

18. See footnote 10, *supra*.

In granting summary judgment for Defendants, the Bankruptcy Court concluded that the Trustee did not satisfy his burden of showing that there was a genuine issue of material fact as to whether the Debtors had received reasonably equivalent value, specifically, as to the value of the repurchase option. The Bankruptcy Court viewed the summary judgment evidence as showing that the repurchase option did have value, and that the value was determined by deducting the option price from the fair market value of the Property. After carefully considering the record and parties' briefs on appeal, this Court independently concludes that the summary judgment record did not establish a genuine issue of material fact as to the value of the repurchase option, or as to whether Debtors received reasonably equivalent value. The Bankruptcy Court did not err in granting summary judgment for Defendants.

C. *Denial of Motions for Reconsideration.* A lower court's denial of a motion for reconsideration, or motion for new trial, will be overturned only for abuse of discretion. *Ford Motor Credit,* 34 F.3d at 324–325. The Trustee argues that the Bankruptcy Court erred by refusing to grant his motions for reconsideration because there was a material fact issue for trial as to the value of the repurchase option, and thus as to whether the Debtors received reasonably equivalent value for the Property[19]. This appeal presents the same arguments and authorities as the Trustee presented to the Bankruptcy Court in his motions for reconsideration. The Court has already analyzed and rejected these arguments as set forth under Subsection B above. The Court concludes the Bankruptcy Court did not abuse its

discretion in denying the Trustee's motions for reconsideration. Accordingly, based on the foregoing reasons,

IT IS ORDERED THAT the Bankruptcy Court's orders granting summary judgment for Defendants, and denying the Trustee's motions for reconsideration, are AFFIRMED.

---

19. The Trustee also argued in his motions for reconsideration, and on appeal, that the Bankruptcy Court misapplied the summary judgment standard to the evidence presented. The Court finds no such error by the Bankruptcy Court.